400 So.2d 553 (1981)
Dr. Gordon HAYSLIP, Petitioner,
v.
The Honorable Paul T. DOUGLAS, Circuit Court Judge of the Fifteenth Judicial Circuit in and for Palm Beach County, Respondent.
No. 81-778.
District Court of Appeal of Florida, Fourth District.
July 1, 1981.
*554 L. Martin Flanagan of Jones & Foster, P.A., West Palm Beach, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for respondent.
HURLEY, Judge.
By petition for writ of prohibition we are asked to determine the propriety of an order denying a motion to disqualify a judge. We conclude that the motion and its supporting documents were legally sufficient and, consequently, the trial judge erred in failing to disqualify himself. We grant and issue the writ of prohibition.
Dr. Gordon Hayslip, a defendant in a medical malpractice action pending before the respondent judge, filed a verified motion for disqualification pursuant to Rule 1.432, Fla.R.Civ.P. Dr. Hayslip averred that he feared he could not obtain a fair and impartial trial due to prejudice or bias on the part of the trial judge against his defense attorney. The motion recited that Hayslip's counsel had moved to disqualify the same judge in two earlier cases and that *555 in response to one of those motions, the trial judge had stated, "I'm going to review the file a little more before I rule, but it appears to me that this is a frivolous and perhaps almost champertous motion for me to recuse myself." Given this history of prior conflict, Dr. Hayslip further averred that a pre-trial hearing had been held in his case to permit the court to consider and rule on plaintiff's counsel's motion to withdraw. The motion was uncontested and at some point in the proceeding, the court pointed at Dr. Hayslip's attorney and said:
There is another lawyer whose name I would like to add to this motion to withdraw. He should not be in this case.
Shortly thereafter, Dr. Hayslip filed a verified motion to disqualify the trial judge. Included in the motion was a verified certificate by defense counsel that the motion and affidavit were made in good faith. Attached to the motion were two sworn depositions from attorneys who represented other codefendants in Dr. Hayslip's case and who had been present at the pre-trial hearing on the motion to withdraw. Each deposition substantiated the statement of facts regarding the trial court's remarks to Dr. Hayslip's attorney.
A hearing was held on the motion for disqualification and at its conclusion the trial judge announced that the motion was denied. Unfortunately, neither at the hearing nor in its order, did the court set forth the rationale for its decision. Thereupon, Dr. Hayslip filed a petition for writ of prohibition and we issued an order to show cause.
Preliminarily, we note that a petition for writ of prohibition is the appropriate procedural device to test the validity of a denial of a motion to disqualify filed pursuant to Rule 1.432, Fla.R.Civ.P. Dickenson v. Parks, 104 Fla. 577, 140 So. 459 (1932); Brewton v. Kelly, 166 So.2d 834 (Fla. 2d DCA 1964); State ex rel. Jensen v. Cannon, 163 So.2d 535 (Fla. 3d DCA 1964).
In approaching the issue of judicial disqualification courts must be ever mindful of the fundamental principles which govern the resolution of these questions. In Dickenson v. Parks, supra 140 So. at 462, the court held:
Prejudice of a judge is a delicate question to raise, but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised should be prompt to recuse himself. No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shadowed or even questioned.
* * * * * *
The outstanding big factor in every lawsuit is the truth of the controversy. Judges, counsel, and rules of procedure are secondary factors designed by the law as instrumentalities to work out and arrive at the truth of the controversy. The judiciary cannot be too circumspect, neither should it be reluctant to retire from a cause under circumstances that would shake the confidence of litigants in a fair and impartial adjudication of the issues raised.
With the foregoing in mind, we turn to Rule 1.432, Fla.R.Civ.P. which delimits the narrow responsibility of a judge presented with a motion for disqualification. In particular, subsection "d" of the rule specifies:
The judge against whom the motion is directed shall determine only the legal sufficiency of the motion. The judge shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall enter an order of disqualification and proceed no further in the action.
To determine whether the motion and its supporting documents are legally sufficient, the court must first turn to the literal requirements of Rule 1.432, Fla.R. Civ.P. and Section 38.10, Florida Statutes (1979). First, the motion must be made by a party; it must be verified, and it must allege the facts relied upon to show the grounds for disqualification. Second, there must be a certificate by counsel of record indicating that the affidavit and application are made in good faith. Third, the operative facts in the party's motion must be *556 substantiated by at least two affidavits from reputable citizens of the county who are not related to the defendant or his attorney.
The term "legal sufficiency" encompasses more than mere technical compliance with the rule and the statute; the court must also determine if the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial. Brewton v. Kelly, supra. As indicated by the court in State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695, 697-98 (1938):
The test of the sufficiency of the affidavit is whether or not its content shows that the party making it has a wellgrounded fear that he will not receive a fair trial at the hands of the judge. It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind, and the basis for such feeling... . [The trial judge] cannot pass on the truth of the allegations of fact. If they are not frivolous or fanciful, they are sufficient to support a motion to disqualify on the ground of prejudice.
Turning now to the verified motion and the supporting documents in the case at bar, we hold that they satisfy the technical requirements of Rule 1.432, Fla.R.Civ.P. and Section 38.10, Florida Statutes (1979). It is of no consequence that Dr. Hayslip was absent from the pre-trial hearing at which the trial judge allegedly made the comments in question. His verified motion contains a detailed statement of facts which led him to believe that he could not receive a fair and impartial trial before the respondent judge. In our view, this satisfies the requirements of subsection "b" of Rule 1.432, Fla.R.Civ.P. To require that the moving party have personal knowledge of the underlying facts would be to impose an unrealistic and unnecessarily constricted limitation. It would ignore the safeguards embodied in the statute's requirements for two supporting affidavits plus a certificate of good faith. Moreover, such a narrow construction would put relief beyond the reach of all but a minute group of litigants. Such a result would be at odds with the clear intent of the statute. Section 38.10 was crafted to insure confidence in the integrity of our system of justice. The availability of its remedy is an indispensable right of all litigants. Thus, we hold that a party need not have personal knowledge of the facts set forth in his motion. However, all of the requirements of the rule and the statute must be met and the supporting affidavits must be fully credible. City of Palatka v. Frederick, 128 Fla. 366, 174 So. 826 (1937).
Counsel for Dr. Hayslip complied with the requirements of Section 38.10, Florida Statutes (1979), by filing a certificate of good faith. Additionally, counsel's certificate was verified. Next, the supporting affidavits or sworn depositions unquestionably substantiate the operative facts set forth in Dr. Hayslip's motion. Both attorneys were present at the pre-trial hearing on the motion to withdraw and both confirmed, practically verbatim, Dr. Hayslip's account of the judge's remarks. The fact that the supporting affidavits were provided by attorneys for co-defendants of Dr. Hayslip, is, in our view, of no account. Neither attorney is related to Dr. Hayslip or his attorney and that is all that the statute requires. We perceive no reason nor authority to accede to respondent's suggestion on appeal that we impose a more stringent requirement.
The only remaining question is whether the alleged remarks, which were directed at defense counsel rather than his client, could reasonably justify the client's fear that he would not receive a fair trial at the hands of the respondent judge. It is well to remember that Section 38.10, Florida Statutes (1979), refers to "prejudice of the judge ... against the applicant, or in favor of the adverse party... ." (Emphasis supplied). This issue was addressed by the court in State ex rel. Jensen v. Cannon, supra:
[A judge] is disqualified where his prejudice against the attorney is of such a degree that it adversely affects the client, *557 in which instance the trial judge should disqualify and recuse himself. See Ginsberg v. Holt, Fla. 1956, 86 So.2d 650; State ex rel. Fuente v. Himes, 160 Fla. 757, 36 So.2d 433; State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613. Id. at 537.
We agree with the court's observation in Brewton v. Kelly, supra at 836, that "[i]t is not always possible with exact particularity in a matter of this kind to set forth facts as to the process of the human mind... ." Nonetheless, we feel certain that under the facts as alleged in Dr. Hayslip's motion, his fear was reasonable and not frivolous nor fanciful. Though a client and his counsel are separate entities, they share a common bond forged by the attorney-client relationship and tempered in the rigors of litigation. Most clients find the courtroom to be an unfamiliar and, in some instances, uncomfortable atmosphere and so it is not unusual that they entrust themselves into their counsel's care and view their interests as one. Thus, it is understandable that a client would become concerned and fearful upon learning that the trial judge has an antipathy toward his lawyer and has expressed the opinion that the client's counsel "should not be in this case."
Ultimately, questions of judicial disqualification, must be viewed in the context of those principles which were eloquently set forth by Justice Terrell in State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939):
[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of Courts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.
It is not enough for a judge to assert that he is free from prejudice. His mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this.
Since we have concluded that Dr. Hayslip's verified motion and supporting documents meet the test of legal sufficiency, we grant and issue the writ of prohibition. We declare the respondent judge disqualified in this matter and prohibit him from taking any further action. We further instruct the Chief Judge of the Circuit Court for the Fifteenth Judicial Circuit, through the normal random assignment process, to cause the case to be reassigned for trial.
The writ of prohibition is granted.
DOWNEY, J., concurs.
LETTS, C.J., concurs specially with opinion.
LETTS, Chief Judge, specially concurring.
I agree with the majority opinion as it applies to the individual facts of this case, but it should not be used prospectively as a vehicle to seek removal of a presiding jurist every time an attorney makes a judge angry, which anger may well be justified and actually in furtherance of the cause of justice rather than prejudicial to it.
Notwithstanding, without any apparent basis whatsoever in this particular case, Judge Douglas delivered a totally gratuitous pronouncement which undeniably revealed his personal distaste for Dr. Hayslip's lawyer. Maybe Judge Douglas honestly felt he had good cause for this distaste, but that is not apparent from the record and therefore of no consequence here. If such is Judge Douglas' conclusion to the point where he is compelled to express it in *558 such a partial manner, he has no option but to withdraw, if the gauntlet is laid down before him in conformity with the statute and the rules. He who chooses to sit on the bench must forego the pleasures of oral condemnations therefrom which are unrelated to the furtherance of the cause at hand. Such exasperated declarations as: "Let the damn appellate court read it for themselves" may be emotionally satisfying and identifiable with such dashing heroes as Rhett Butler; however the declaration would be just as apropos without the "damn" and certainly more judicious.